IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Pamela Marshall,**

   **Plaintiff,**

v.                   Case No. 14-1118-JWL

**Carolyn W. Colvin,**
**Acting Commissioner of Social Security,**

   **Defendant.**

## MEMORANDUM & ORDER

Plaintiff Pamela Marshall brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the decision of defendant, the Commissioner of Social Security, to deny her applications for social security disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Act. According to plaintiff, the ALJ erred in evaluating whether she satisfied the criteria of listing 12.05C. Finding error as alleged by plaintiff in the ALJ's step three evaluation, the court orders that the Commissioner's decision is reversed and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) remanding this case for further proceedings consistent with this opinion.

### I. Procedural Background

On June 9, 2011, plaintiff protectively filed an application for disability insurance benefits and for supplemental security income benefits, alleging disability beginning December

11, 2009 due to "borderline" mental retardation, anxiety and depression. The applications were denied both initially and upon reconsideration. At plaintiff's request, an administrative law judge ("ALJ") held a hearing on March 18, 2013, at which both plaintiff and her attorney were present via video conference. On April 25, 2013, the ALJ rendered a decision in which he determined that plaintiff was not under a "disability" as defined by the Social Security Act from December 11, 2009 through the date of the decision.[1] Consequently, the ALJ denied all benefits to plaintiff. After the ALJ's unfavorable decision, plaintiff requested review by the Appeals Council. The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final decision of defendant.

## II.     Standard of Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards. *See Wells v. Colvin*, 727 F.3d 1061, 1067 (10th Cir. 2013) (citing *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)). The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Wilson*, 602 F.3d at 1140). In the course of its review, the court may not reweigh the evidence or substitute its judgment for that of defendant. *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008).

---

[1] Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012.

**III.     Relevant Framework for Analyzing Claim of Disability and the ALJ's Findings**

A "disability" for purposes of the Social Security Act requires both the "inability to engage in any substantial gainful activity" and "a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Bussell v. Astrue*, 463 Fed. Appx. 779, 781 (10th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)).  The Social Security Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Wilson*, 602 F.3d at 1140 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. § 423(d)(2)(A), 1382c(a)(3)(B))).

The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled, *see id*. at 1139, and the ALJ in this case followed the five-step process.  If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Id.*  Step one requires the claimant to show that he or she is not presently engaged in substantial gainful activity. *Id*.  Here, the ALJ determined that plaintiff was not engaged in substantial gainful activity and, thus, properly proceeded to the second step.  The second step of the evaluation process involves a determination of whether "the claimant has a medically severe impairment or combination of impairments" that significantly limits his or her ability to perform basic work activities. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521).

3

At this step, the ALJ concluded that plaintiff had several severe impairments, including mild mental retardation; major depressive disorder; adjustment disorder with anxiety and depression; generalized anxiety disorder with panic attacks; and post-traumatic stress disorder.[2] Thus, the ALJ proceeded to step three.

In step three, the ALJ determines whether the impairment "is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity." *Best-Willie v. Colvin*, 514 Fed. Appx. 728, 733 (10th Cir. 2013). "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits." *Id*. If not, the evaluation proceeds to the fourth step, where the claimant must show that the "impairment or combination of impairments prevents him from performing his [or her] past work." *Wilson*, 602 F.3d at 1139 (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). With respect to the third step of the process in this case, the ALJ determined that plaintiff's impairments were not listed or medically equivalent to those listed in the relevant regulations. Here, the ALJ specifically rejected plaintiff's argument that she met listing 12.05C. According to the ALJ, while plaintiff's IQ scores "would appear to meet 12.05C," plaintiff "functioned at a higher level" and did not demonstrate another physical or mental impairment "imposing an additional and significant work-related limitation of function" as required by 12.05C.

At the fourth step, the ALJ determined that plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels, with the limitation that

---

[2] The ALJ identified plaintiff's asserted physical impairments as non-severe impairments and those findings are not challenged by plaintiff.

plaintiff perform only simple tasks outside the context of a fast-paced production environment. Based on evidence adduced from the vocational expert, the ALJ concluded that plaintiff, with the limitations established in plaintiff's RFC, could not perform her past relevant work.  Thus, the ALJ proceeded to the fifth and final step of the sequential evaluation process–determining whether the claimant has the residual functional capacity "to perform work in the national economy, given her age, education, and work experience." *See id*. (quoting *Lax*, 489 F.3d at 1084).  At that point, the ALJ properly shifted the burden of proof to defendant to establish that plaintiff retains a sufficient capacity to perform an alternative work activity and that there are sufficient jobs in the national economy for a hypothetical person with the claimant's impairments.  *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009).  At this step, the ALJ concluded that plaintiff was not disabled, a conclusion that rested on a finding that plaintiff, despite her limitations, could perform jobs that exist in significant numbers in the national economy, such as a janitor, laundry worker and hand packer.

## IV.   The ALJ's Step Three Evaluation

In her motion, plaintiff contends that the ALJ erred in evaluating whether plaintiff satisfied the criteria of listing 12.05C.  To satisfy listing 12.05, "a claimant must meet the requirements of that listing's capsule definition as well as one of the four severity prongs for mental retardation as listed in the regulations." *Havenar v. Astrue*, 438 Fed. Appx. 696, 698 (10th Cir. 2011) (citing *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009)).  The relevant severity prong, subsection C, "requires a showing of a 'valid verbal, performance, or full scale

5

IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.'" *Id.* (quoting listing 12.05C).

It is undisputed that plaintiff's IQ scores fall within the presumptive range of listing 12.05C and the ALJ expressly recognized that plaintiff's scores "would appear to meet 12.05C." In that regard, plaintiff's June 2009 testing reflected a verbal IQ of 70; performance IQ of 69; and full scale IQ of 67.[3] Nonetheless, the ALJ concluded that plaintiff did not satisfy listing 12.05C because she did not demonstrate "an additional and significant work-related limitation of function." According to the ALJ, plaintiff's additional impairments of anxiety and depressive disorders did not satisfy 12.05C because plaintiff, at times, had been able to work at substantial gainful activities despite those impairments.

As plaintiff points out, however, any impairments that are found to be severe impairments at step two will typically satisfy the de minimis standard for meeting listing 12.05C's "significant limitation" requirement. *Id.* (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (observing that the "significant limitation" standard closely parallels the de minimis standard of step two)). Here, the ALJ included several severe impairments at step two but did not adequately explain why those same impairments did not satisfy 12.05C's "significant limitation" requirement. The ALJ's reliance on plaintiff's work history to reject the idea that her additional impairments did not meet the requirement was misplaced. *See Hinkle v. Apfel*, 132 F.3d 1349, 1352-53 (10th Cir. 1997) (a decision regarding whether a claimant has a

---

[3] While the ALJ's opinion clearly reflects skepticism about whether plaintiff's IQ scores are an accurate reflection of her intellectual abilities, defendant does not dispute that the ALJ, at least for purposes of his decision, presumed that her scores satisfied the listing.

"significant limitation" for purposes of listing 12.05C must be made without consideration of whether the claimant can perform any gainful activity beyond the analysis as made at step two).

Defendant glosses over this error and suggests that the ALJ's decision can and should nonetheless be upheld based on the ALJ's conclusion that plaintiff failed to satisfy the capsule definition of listing 12.05C. According to the capsule definition, "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *Havenar*, 438 Fed. Appx. at 699 (quoting 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05). The problem with this argument is that the ALJ's cursory findings regarding the capsule definition, to the extent he made such findings, are not supported by substantial evidence.

The ALJ stated in his step three findings that plaintiff "functions at a higher level" than her IQ scores would suggest and specifically noted that plaintiff finished high school, obtained a certified nursing assistant certification, and has a history of substantial gainful work activity. These bare facts, however, are not necessarily inconsistent with a finding of mild mental retardation. *See Gross v. Astrue*, 2012 WL 2449900, at *10 (D. Kan. June 26, 2012) (ability to work and attend school not inconsistent with mild mental retardation) (collecting cases). As this court has previously explained,

> such activities are consistent with mild mental retardation . . . [and] they cannot demonstrate a level of adaptive functioning that is higher than IQ scores which are also consistent with mild mental retardation. Listing 12.05C accommodates such activities, and anticipates that a mildly mentally retarded individual will be able to perform all of these activities and will also be able to perform substantial gainful activity unless or until he develops another severe mental or physical impairment. Contrary to the ALJ's assertion, these activities do not indicate adaptive

7

> functioning to a higher degree than would be indicated by IQ scores between 60 and 70 as contemplated by Listing 12.05C.

*Id*. Moreover, the facts relied upon by the ALJ are not persuasive in light of other evidence in the record demonstrating that plaintiff has not been able to hold a job for more than a few months at a time, that plaintiff attended special education classes from kindergarten through high school graduation and that the consultative psychologist could not rule out a mild mental retardation diagnosis. *See Harrold v. Astrue*, 299 Fed. Appx. 783, 788 (10th Cir. 2008) (work history not inconsistent with diagnosis of mild mental retardation where claimant had no trouble getting jobs but could not keep jobs). The ALJ did not discuss how these specific facts might affect his findings as to whether plaintiff met the capsule definition of listing 12.05C.

The ALJ also failed to discuss at step three evidence in the record suggesting that plaintiff had mild mental retardation before age twenty-two. The ALJ, for example, did not address at step three the evidence that plaintiff required special education classes from kindergarten through 12th grade or that plaintiff needed special assistance to obtain her driver's license, which was then revoked pending plaintiff's completion of additional driving classes. *See Ogin v. Comm'r of Social Security*, 2014 WL 2940599, at *12 (M.D. Pa. June 30, 2014) (remanding for additional step three analysis where ALJ did not address whether claimant experienced deficits of adaptive functioning prior to age 22 and record contained evidence that claimant attended special education classes beginning in second grade and never held a job more than a few months); *Weeks v. Astrue*, 2012 WL 2133446, at *10 (E.D.N.C. May 23, 2012) (remanding for discussion of diagnostic element of mental retardation analysis where discussion was limited to a finding that plaintiff had been able to raise her family and perform work activity

on a sustained basis; at the very least, ALJ should have discussed claimant's enrollment in special education classes). In addition, plaintiff's IQ testing was performed at age twenty-two, which is some evidence of manifestation during the developmental period. *Gross*, 2012 WL 2449900, at *11.

Finally, while the Commissioner urges that the ALJ also relied on plaintiff's daily activities and opinion evidence in finding that plaintiff did not demonstrate deficits in adaptive functioning, that evidence has no bearing on the issue of whether plaintiff suffered from such deficits *prior to age 22*. In any event, those findings were made in the context of the ALJ's RFC assessment and it is not clear whether the ALJ considered that evidence as part of his determination that plaintiff did not meet the requirements of listing 12.05C. *See Weeks*, 2012 WL 2133446, at *10 (remand required in part because ALJ discussed evidence in context of RFC assessment and court could not determine whether evidence was considered at step three); *Williams v. Colvin*, 2013 WL 6058204, at *9 (E.D.N.C. Nov. 15, 2013) (RFC determination and question of whether claimant meets the diagnostic criteria embodied in Listing 12.05 are distinct inquiries; remand required where ALJ discussed intellectual functioning more thoroughly during RFC assessment but court could not impute RFC conclusions to Listing 12.05C analysis).

In sum, finding error as alleged by plaintiff in the ALJ's step three evaluation, the court orders that the Commissioner's decision is reversed and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) remanding this case for a proper analysis and further explanation of the step-three decision.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision is reversed and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) remanding this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated this 6th day of February, 2015, at Kansas City, Kansas.

                                        s/ John W. Lungstrum  
                                        John W. Lungstrum  
                                        United States District Judge